THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. MJ20-336 |
| Plaintiff, | ) ) | DEFENSE RESPONSE TO GOVERNMENT'S MOTION FOR |
| v. | ) ) | REVIEW AND REVOCATION OF RELEASE ORDER (DKT. 29) |
| MARGARET AISLINN CHANNON, | ) ) | |
| Defendant. | ) ) | |

In continuing to insist that the Court should detain a 25-year-old young woman at the Federal Detention Center during the COVID-19 pandemic, the government urges the Court to reach conclusions that the facts the government alleges simply do not establish. The government overreaches the record and heavily emphasizes its stated plan to bring additional mandatory minimum penalties to bear on Ms. Channon. It asks the Court to disagree with United States Pretrial Services' considered opinion that it can effectively supervise Ms. Channon in the community. The government's exhortations are unsupported by the Bail Reform Act or the record in this case.

The Honorable Brian A. Tsuchida, Chief United States Magistrate Judge, correctly found that Ms. Channon can safely be released into the community to Pretrial Services' supervision. The well-reasoned Appearance Bond contains appropriate conditions, which are sufficient to ensure her appearance and community safety. The defense respectfully asks this Court, upon its *de novo* review, to deny the government's motion to revoke the Appearance Bond.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 1

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

## I.   Procedural History

### A.   Arrest; Detention stipulation; Motion to reopen.

Ms. Channon was arrested on June 11, 2020. Dkt. 13. That day, the government filed the Complaint in this case and a moved for detention. Dkts. 1, 3. Ms. Channon made her initial appearance on June 12, 2020. Dkt. 11. Ms. Channon stipulated to detention at her initial appearance rather than asking the Court to release her to live with her mother. *Id.* Although her mother's home was available to her at that time, Ms. Channon did not ask to be released there initially largely due to concerns for her mother's safety and mental health and concern about harassment. She wanted the two to be able to talk and for her mother to have a full opportunity to consider whether Ms. Channon living there was the right decision given the charges and surrounding publicity. She also decided it was prudent to take additional time to discuss release planning with counsel and other members of the Federal Public Defender (FPD) defense team.

On July 2, 2020, the defense filed an unopposed motion asking the Court to reopen Ms. Channon's detention hearing. Dkt. 18. That motion was granted and the detention review hearing was set for July 15, 2020.[1]

### B.   Limited access to counsel at the Federal Detention Center.

Due to the special operations procedures the Bureau of Prisons has put in place to try to address the COVID-19 pandemic, Ms. Channon's access to counsel was extremely limited while she underwent quarantine. Despite repeated requests for more time to speak with Ms. Channon, counsel was only able to speak with her for 30 minutes at a time and on fewer occasions than requested. During this time, Ms. Channon had no independent ability to contact counsel.

---

[1] This event appears without entry number assignment. It appears between docket entries 18 and 19.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 2

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

The ability to communicate has improved following Ms. Channon's release from quarantine but counsel believes it still remains deeply inadequate to allow for effective preparation of her defense. In person visitation at the FDC—including legal visitation—remains suspended. The defense team is now able to communicate with Ms. Channon either via telephone or video conference. Video conferences are limited to one-hour and the defense team has, on each occasion, found that the time allotted was insufficient to cover everything about which we wished to speak with Ms. Channon. While telephone meetings do not carry the same time restrictions, they are a much less effective means of communication. The defense team is unable to show documents to Ms. Channon via telephone. Communication is also impaired by an inability to see facial expressions and body language and the often-stilted nature of conference calls. Ms. Channon is now able to call counsel from an open area in the unit where she is confined, but the calls are not private because they occur within earshot of other people in the unit.

If Ms. Channon is released, she and the defense team will be able to communicate via videoconference without time limitations until in person meetings at the FPD office resume.

### C. Pre-hearing briefing.

Prior to the detention review hearing, the defense submitted a memorandum asking the Court to release Ms. Channon to Pretrial Services' Supervision,[2] with exhibits. It laid out its proposed release plan and submitted exhibits for the Court's consideration. A number of the exhibits were sealed due to safety and privacy concerns. Rather than re-filing the exhibits, counsel will submit a courtesy copy of the defense's memorandum and all of the defense's exhibits to the Court via email. The defense

---

[2] After its initial filing, dkt. 19, the defense filed a praecipe submitting an amended memorandum to correct a sentence in the initial filing. The defense's amended memorandum and Exhibit A thus appear at docket 22. Sealed Exhibits B-D appear at docket 21.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

incorporates the exhibits and arguments submitted to in connection with the detention review hearing to this response.

The government also submitted a memorandum arguing for Ms. Channon's detention. The government's memorandum in many ways mirrors its motion to this Court. It also contained a passage excerpted below, which counsel includes here because it was argued during the detention review hearing and remains relevant to the credibility of the narrative the government urges upon this Court:

> Channon was one of a relatively small number of people who hijacked the otherwise lawful protests and created a scene of chaotic civil disorder. The following exchange between three Twitter users adeptly summarizes the role Channon ("that one woman") played in instigating and fueling the violent rioting in Seattle:
>
> **ohisuppose** 125 points · 5 days ago
> Holy shit. That one woman changed the narrative of the protests in Seattle. Seeing the cop cars in fire opened so many doors for looting.
>
> **EatMoreMeatYaWaif** 31 points · 5 days ago
> They weren't just giving you free reign to destroy shit without consequences. This
>
> **gaviidae** 59 points · 5 days ago
> Don't feel bad for her. She was there to destroy stuff not to protest
>
> Reply  Share  ···

Dkt. 23, at 2.

      D.     *Pretrial Services' release recommendation.*

Prior to the detention hearing, Pretrial Services telephonically interviewed Ms. Channon, with undersigned counsel and FPD Social Worker Daniel Potter-Engelskirger present via telephone.[3] Pretrial Services also spoke with Ms. Channon's mother again for verification. Following careful consideration and staffing, Pretrial Services determined that it could effectively supervise Ms. Channon in the community. It thus recommended that the Court release Ms. Channon with pretrial supervision. As part of

---

[3] Ms. Channon also kindly assented to FPD legal intern Olivia Glass listening to the interview. Ms. Glass substantially contributed to Exhibit A of the defense's memorandum supporting release.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 4

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

its recommendation, Pretrial Services recommended that the Court impose numerous special conditions of supervision designed to mitigate any risk of flight or danger.

### E. The detention review hearing.

At the detention review hearing, the government argued that Ms. Channon should remain detained. The defense argued that Ms. Channon should be released and did not object to the conditions Pretrial Services recommended, with the exception of a legal objection to a component of one condition. A transcript of the hearing is attached to this motion for the Court's consideration. *Appendix A*. The defense incorporates all of its arguments from that hearing into this response. Counsel, therefore, does not rehash the hearing argument here.

### F. Carefully crafted Appearance Bond; Government motion to revoke.

The Honorable Brian A. Tsuchida, Chief United States Magistrate Judge, concluded that Ms. Channon could be safely released upon an appearance bond with appropriate conditions. The Appearance Bond he fashioned adopted all of the conditions Pretrial Services recommended, as written. His Honor overruled counsel's legal objection to the medication component of the mental health condition and thoughtfully explained to Ms. Channon his reasons for doing so. His Honor also imposed a location monitoring condition, with curfew, as part of the Appearance Bond.

Prior to concluding the hearing, the conditions were reviewed with Ms. Channon and she expressed that she will abide by all of the conditions. Her permission was obtained to electronically affix her signature to the bond. If she is released, Pretrial Services will again review the bond conditions with her during intake prior to her leaving with location monitoring equipment affixed to her ankle. Ms. Channon was also warned of the serious consequences that attend failing to comply with her bond conditions.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

      G.    *New Information: Ms. Channon's job awaits her.*

Since the hearing, an FPD paralegal assigned to Ms. Channon's case has communicated with her employer and confirmed that she will be welcome to return. Via email, her employer said:

> Yes we will be happy to have Marge back. She was a good worker at [the business[4]] before we temporarily closed for Covid. Luckily we are back open and trying to get back to normal as possible. I am aware of her situation from what I read in the Tacoma News Tribune. My biggest concern is that she be tested for Covid as we discussed. Other than that I will get her on as many shifts as possible.

If Ms. Channon is released, the FPD will work with her to find a testing location so that she can return to work as soon as possible.[5]

**II.    Ms. Channon Should be Released**

      *A.    The Bail Reform Act; No presumption of detention applies here.*

The Bail Reform Act (BRA) provides for release of a person upon a "any condition or combination of conditions" if those conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community". 18 U.S.C. § 3142(f). The statute thus presumes release in the absence of a judicial finding that no conditions exist that will reasonably assure the twin goals it describes. It does not require certain or near-certain assurance of appearance and community safety—just that the conditions will provide reasonable assurance. In this way, the statute balances the judicial process, community safety, and the presumption of innocence by avoiding unnecessary detention of people who are presumed innocent.

The BRA provides for a rebuttable presumption of detention only where a person is accused of committing a small subset of statutes. 18 U.S.C. § 3142(e). This case does not fall into that subset and no presumption of detention applies here. *Id.*

---

[4] The name of the business is not listed here due to privacy and safety considerations, but it appears in the Supplemental Pretrial Services report.

[5] During videoconferences, counsel has observed her assiduously adhere to FDC mask protocols.

DEFENSE RESPONSE TO GOVERNMENT'S MOTION FOR REVIEW & REVOCATION OF RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 6

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

The government heavily emphasizes the serious nature of the charges—both by reiterating the five-year mandatory minimum already in play and its intent to add even more draconian penalties in the grand jury, and by calling upon proffered facts regarding the offense. Nothing about the charge dictates that Ms. Channon be detained, however—neither the penalties she faces, nor the facts as the government alleges them. Congress did not include the offense in BRA's list of rebuttable presumption offenses. It could have but chose not to.

Additionally, as Exhibit A to the defense's memorandum for the detention review hearing demonstrates, courts have seen fit to release people facing the same charges stemming from incidents involving more aggravated attacks (such as cases involving use of Molotov cocktails.)[6] While each detention assessment is individualized, these cases reflect the reality that arson cases arising out of the protests do not present unmitigable risk of flight or danger.

### B. Facts v. Conjecture.

The government points to claims that Ms. Channon's alleged offenses were pre-planned and that she was planning future attacks in asking the Court to find her offense

---

[6] The defense is now aware of the following additional cases: *United States v. Sanchez-Santa*, No. 1:20-mj-06295, Release Order ECF No. 5 (S.D.N.Y. June 18, 2020) (granting pretrial release to an individual charged with violating 18 U.S.C. 844(f) and 2); *United States v. Goodner*, No. 1:20-cr-00346, Release Order ECF No. 11 (N.D. Ohio July 2, 2020) (granting pretrial release to individual charged with violating 18 U.S.C. 844(i) and 2); *United States v. Tillmon*, No. 2:20-cr-00289, Release Order ECF No.15 (C.D. Cal. July 13, 2020) (granting pretrial release to an individual charged with violating 18 U.S.C. 844(i)); *United States v. Montgomery*, No. 2:20-mj-01369, Release Order ECF No. 10 (W.D. Penn. June 30, 2020) (granting pretrial release to an individual charged with violating 18 U.S.C. 844(f)); *United States v. Williams*, No. 0:20-mj-00411, Release Order ECF No. 11 (D. Minn. June 19, 2020) (granting pretrial release to an individual charged with violating 18 U.S.C. 844(i) and 18 U.S.C. 371); *United States v. Dudley*, No. 3:20-mj-03019, Release Order ECF No. 15 (D.N.J. June 30, 2020) (granting pretrial release to an individual charged with violating 18 U.S.C. 844(i) and 2 and 18 U.S.C. 844(f)(1) and 2); *United States v. Robinson*, No. 3:20-mj-03019, Release Order No. 12 (D. Minn. July 14, 2020) (granting pretrial release to an individual charged with violating 18 U.S.C. 844(i) and 2).

DEFENSE RESPONSE TO GOVERNMENT'S MOTION FOR REVIEW & REVOCATION OF RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 7

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

especially serious. The allegations it proffers to the Court do not establish either, however. Far from it.

In claiming to show that Ms. Channon developed a pre-meditated plan to commit arson, the government points to a claims unsupported by fact even if one assumes that all of the proffered allegations are accurate. First, the government claims that Ms. Channon *brought* an aerosol can and lighter to the protest on May 30, 2020. The only facts it offers regarding this claim are photos it says depict Ms. Channon possessing an aerosol can and, presumably, a lighter at the protest. It provides nothing to support finding that she brought the items with her. Showing that someone *had* items as innocuous as an aerosol can and a lighter does not establish that they *brought* the items. An aerosol can could easily have been something discarded and picked up on the street or taken from one of the stores the government says Ms. Channon entered—such as one of cans of spray disinfectant that have become ubiquitous during the pandemic.

It also points to a drawing found when law enforcement searched Ms. Channon's home to say that she had been planning to burn police vehicles since February. In addition to being a huge leap to take from a drawing that the government cannot even establish that Ms. Channon drew,[7] this argument also ignores the fact that the government's own Complaint demonstrates that Ms. Channon peacefully protested in downtown Seattle the prior day. *See* Dkt. 1, at 11. In addition to being devoid of any allegations that Ms. Channon participated in violence, one of the pictures included in the Complaint shows her peacefully standing before police with her hands up. *Id.* Notably, the photo appears to show Ms. Channon engaged in a peaceful protest tactic commonly urged upon white allies, which is designed to reduce tension with the police

---

[7] As counsel noted during the hearing, Ms. Channon's name on the drawing suggests that someone else drew it for her as a gift, rather than that she drew it herself to memorialize a devious plan.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 8

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

and protect protesters of color—white allies standing or walking at the front of protest groups to shield protesters of color from police violence:



The government also points to Ms. Channon purportedly being involved in inauguration day protests in Washington, DC, as a reason to find her to be a danger. While the government characterizes the protests as "riots," it offers no facts to support that she was involved in anything but the peaceful demonstrations that took place on inauguration day. It states that Ms. Channon rode around on a bicycle radioing information to other protesters—nothing more. These actions are also consistent with efforts to *reduce* clashes with police. The government offers nothing to support its assumption of nefarious intent. Ms. Channon was not arrested or convicted of any offense. The government does not allege she engaged in violence. Rather, it asks the Court to take negative inference and hold political activism against her when all it has shown is a person exercising their constitutional right to protest.

Finally, the government also asks the Court to infer that Ms. Channon uses methamphetamine based upon a police report that resulted in no charges, much less any convictions. This invitation must be declined. Ms. Channon denies the government's allegations. Moreover, her bond conditions include drug testing and treatment provisions based upon her admitted use of marijuana.

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

### C. The Appearance Bond conditions "will reasonably assure Ms. Channon's appearance and the safety of any other person and the community"—Ms. Channon should be released.

As outlined above, Ms. Channon must be released if conditions can be put in place that will reasonably assure her appearance and the safety of other persons and the community. The Appearance Bond does just this. The government's motion should, therefore, be denied. In asking the Court to find that Ms. Channon is a flight risk, the government ignores her meaningful ties to Seattle and makes unwarranted assumptions regarding her travelling. As addressed during the hearing argument, the government makes unwarranted assumptions and its argument that Ms. Channon presents an unmitigable risk of flight should be rejected.

In addition to issues addressed above, the government argues that Ms. Channon conducted online searches and that the content of those searches should prompt the court to find that she is an unmitigable danger. This argument fails for multiple reasons. First, even if taken as true, the government's proffer only establishes that someone searched the listed terms from Ms. Channon's phone—not that she was the one to do so rather than someone she was with borrowing her phone and performing such a search. Second, people search for all types of things on the internet that they never intend to act upon. And third, law enforcement thoroughly searched Ms. Channon's home when they arrested her (five to ten days after the various searches to which the government points.) The search yielded nothing related to the searches.

The Appearance Bond mitigates any risk of flight or danger, and it reasonably assures both. In addition to the severe legal penalties Ms. Channon would face if she were to fail to appear, flee, or commit a new offense, the bond conditions mitigate any concerns regarding flight or safety. Bond requirements that compellingly address any risk include, but are not limited to: (1) placing Ms. Channon under Pretrial Services supervision; (2) imposing location monitoring with a curfew; (3) Ms. Channon's

DEFENSE RESPONSE TO GOVERNMENT'S
MOTION FOR REVIEW & REVOCATION OF
RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 10

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

mother, who has already demonstrated that she will reach out to law enforcement if the time comes, serving as a third-party custodian; (4) precluding Ms. Channon from obtaining any travel documents; (5) requiring Ms. Channon to undergo a mental health evaluation and follow treatment recommendations; and (6) implementing drug testing and treatment should Pretrial Services deem treatment necessary.

Ms. Channon's ties to this community also demonstrate that she will not pose a risk of flight or danger if she is released on bond. She will be living with her mother and has friendships she has built in Seattle. She has a job that she enjoys, and where she is valued by her employer, waiting for her. She also has an established relationship with a mental health treatment provider, with whom she hopes to resume counseling. Ms. Channon's father also explained in his letter to the Court that he will travel to Seattle as soon as he learns of her release, and that he will bring her brother with him so that her family is here to support her.

Ms. Channon has a life and community in Seattle. She has people here she cares about, and people who care about her. She also has friends who have offered to provide emotional support remotely, and she will have the FPD's help in accessing any necessary services, navigating the legal process, and being successful on bond. The alternative of a life on the run—living in fear, always looking over her shoulder, and never being able to see the people she loves—is not the attractive option the government asks the Court to believe it to be. Moreover, if Ms. Channon's hope was to get out and run, as the government suggests, she would not have stipulated to detention at her initial appearance—she would have done what she could to try get out quickly. Ms. Channon has also now experienced the Federal Detention Center, to which no one wants to return, and will carry that experience with her while on bond.

This Court routinely sees people facing mandatory minimum sentences cooperate with pretrial supervision, make all of their court appearances, and surrender

DEFENSE RESPONSE TO GOVERNMENT'S MOTION FOR REVIEW & REVOCATION OF RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

as scheduled for their sentences. Ms. Channon knows that, no matter how bad things are, they can always get worse. She knows the negative impact that violating bond would have on her case and that she could face additional charges. She is prepared to abide by all of the bond conditions imposed. Those conditions will reasonably assure her appearance and community safety, and the defense respectfully requests that the Court deny the government's motion to revoke the Appearance Bond.

### III. Another Hearing is Unnecessary

The Court now has the benefit of two rounds of briefing by the parties and a transcript of the detention review hearing. The parties have had ample opportunity to provide the Court with information relevant to its decision and to build their respective records. Scheduling an additional hearing is thus unnecessary and will also result in additional delay, particularly given COVID-19 related procedures in place. The defense respectfully requests that the Court rule upon the record before it.

### IV. Conclusion

Margaret Channon should be released. There is no presumption of detention in this case, and the Appearance Bond fashioned contains conditions that mitigate any risk of flight or danger. If released, Ms. Channon will be supervised by Pretrial Services, which will be aided by her mother's service as third-party custodian. She will be subject to location monitoring; Pretrial Services will know precisely where she is 24-hours a day. She will be mandated to participate in any necessary treatment and will have the Federal Public Defender's support connecting with services. She has a job to return to, a stable place to live, and family and friends committed to supporting her.

DATED this 17th day of July 2020.

Respectfully submitted,

s/ *Vanessa Pai-Thompson*
Assistant Federal Public Defender
Attorney for Margaret Channon

DEFENSE RESPONSE TO GOVERNMENT'S MOTION FOR REVIEW & REVOCATION OF RELEASE ORDER
(*United States v. Channon*, MJ20-336) - 12

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100